# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF KENTUCKY

### LOUISVILLE  DIVISION

LEEP, INC., an Oregon corporation,

      Plaintiff,

v.

LAURENCE ZIELKE, an individual  and
ZIELKE LAW FIRM, PLLC, a Kentucky
professional limited liability company

      Defendants.

Case No.:   3:23CV-8-DJH

COMPLAINT

DEMAND FOR JURY TRIAL

For its Complaint against Laurence Zielke ('Zielke") and Zielke Law Firm, PLLC ("ZLF")

LEEP, Inc. ("LEEP" or "Plaintiff") through its counsel, alleges as follows.

## PARTIES

1.     Plaintiff is a corporation organized under the laws of the State of Oregon with its

principal place of business at 255 Blue Lakes Blvd. N, #516, Twin Falls, Idaho 83301. At all

relevant times, Plaintiff's stock was publicly traded on the over the counter market.

2.     Upon information and belief, ZLF is a professional limited liability company

organized under the laws of the Commonwealth of Kentucky with its principal place of business

located at 1469 St. James Court, Louisville, KY 40208 and whose registered agent and registered

office are, respectively, Laurence J Zielke, 8901 Cromwell Hill Road, Suite 2000, Louisville, KY

40222.

3.     Upon information and belief, ZLF is a law firm engaged in the practice of law in

the Commonwealth of Kentucky and elsewhere that represented LEEP in multiple litigations in

Kentucky and otherwise represented LEEP on non litigation matters.

4.      Upon information and belief, Zielke is an attorney admitted to practice law in the Commonwealth of Kentucky, is a member of ZLF, working at 1469 St. James Court, Louisville, KY 40208 and is a resident of Louisville, Kentucky.

5.      Upon information and belief, Zielke was the attorney assigned by ZLF to lead its representation of LEEP in multiple litigations in the Commonwealth of Kentucky and ZLF's representation of LEEP otherwise.

JURISDICTION AND VENUE

6.      LEEP is an Oregon corporation with its principal place of business in Idaho.

7.      From 2007 until August 31, 2020, John Nordstrom ("Nordstrom") was a Director and the Chief Executive Officer of LEEP.

8.      In 2013, Nordstrom caused LEEP to engage Zielke and ZLF as its counsel to file a lawsuit in the Jefferson County Circuit Court against Outdoor Venture Corporation OVC, J.C. Egnew, Ray Moncrief, Kentucky Highlands Development Corporation, Kentucky Highlands Investment Corporation, Stearns Manufacturing and John Does 1-10. This lawsuit was captioned Leep, Inc., v. Outdoor Venture Corporation et al, Case No. 13-CI-00086 (Jefferson (KY) Circuit Court, filed January 7, 2013) (the "Original Suit").

9.      Upon information and belief, since the retention of ZLF and Zielke to represent LEEP in the Original Suit, ZLF and Zielke have continuously represented and advised LEEP on various matters, including tax and general corporate advice as well as litigation conducted in this District in  Kentucky.

10.      LEEP's claims against Zielke and ZLF arise from their legal representation of LEEP.

2

11.     This Court has subject matter jurisdiction over the claims in this action because the amount in controversy is greater than $75,000 and because the events involve parties in different states pursuant to 28 U.S.C. §1332.

12.     Venue is proper in this Court pursuant to 28 U.S.C. §§1391(b)(1) and (2) because (1) ZLF is a resident of this District and, upon information and belief, Zielke is a resident of this District, and (2) this is the judicial district in which a substantial part of the acts and omissions giving rise to LEEP's claims against the defendants occurred.

FACTS COMMON TO ALL ALLEGATIONS

13.     LEEP is a publicly held company with approximately 1,260 shareholders whose stock, until recently, was publicly traded on NASDAQ .

14.     LEEP was founded in 1968 by Grant Record.

15.     Originally, LEEP was known as Fiberteech Corporation, and it has undergone several name changes over its five-decade history.

16.     Since its founding, LEEP has developed, manufactured, and sold structural insulated steel-form core panels ("SIP") and similar products.

17.     LEEPCore SIP is a galvanized steel skin, polyurethane form core, load-bearing SIP that is used to construct walls, roofs, and floors.

18.     In 2007, Nordstrom was appointed as Chief Executive Officer (CEO) of LEEP and was made a member of LEEP's Board of Directors. Nordstrom continued in these positions until August 31, 2020.

19.     In 2013, Nordstrom was negotiating with Outdoor Venture Corporation ("OVC") a potential joint venture opportunity.  In connection with those negotiations Nordstrom disclosed confidential LEEP information to OVC pursuant to a non disclosure agreement with OVC.

20.     In 2013, Nordstrom retained Zielke and ZLF to file the Original Suit on behalf of LEEP against OVC and its other affiliates for, among other claims, breach of the nondisclosure agreement.

21.     Upon information and belief, since their retention to prosecute the Original Suit and at all times thereafter, neither Zielke nor ZLF communicated with any representative of LEEP other than Nordstrom or took direction from any other representative of LEEP other than Nordstrom.

22.     On October 30, 2015, Russell C. Adams, Jr., a member of the LEEP Board of Directors died. At the time, Mr. Adams was one of four Directors of LEEP, the minimum number required under Article II.2 of the LEEP Bylaws for the Board of Directors to effectively function.

23.     From the death of Mr. Adams, Jr. in October 2015, until August 31, 2020, LEEP did not have the minimum number of directors in office for its Board of Directors to fully function.

24.     Zielke and ZLF represented LEEP throughout the Original Suit. After the death of Mr. Adams, Jr.,  Nordstrom, Zielke and ZLF negotiated the settlement of the Original Suit pursuant to a settlement agreement dated July 14, 2016  (the "Settlement Agreement").

25.     In 2018, in response to an inquiry about the resolution of the Original Suit by Grant Record, a LEEP director, and his wife, Melanie Record, Nordstrom misrepresented the terms of the Settlement Agreement by telling them that the Settlement Agreement forgave some debt but did not provide any excess cash.  Nordstrom falsely stated that there was only enough cash from the settlement to pay the fees of the attorneys and accountants.

26.     Zielke and ZLF continued to represent LEEP subsequent to the Settlement Agreement and advised it on various matters unrelated to litigations in Kentucky as well as matters that ultimately became the subject of litigation in this District.

27.     Upon information and belief, Zielke and ZLF represented LEEP in the negotiations surrounding the alleged breach of the Settlement Agreement by OVC.  When the negotiations failed, Zielke and ZLF also represented LEEP in the filing and prosecution of the arbitration LEEP filed against OVC in Louisville KY for breach of the Settlement Agreement.

28.     Zielke filed on behalf of LEEP a demand for arbitration dated August 15, 2019 initiating an arbitration proceeding against OVC  captioned Leep, Inc v. Outdoor Venture Co. et al (AAA Case No. 01-19-0002-5641) (the "Arbitration"). Zielke and ZLF represented LEEP in the Arbitration.

29.     A number of shareholders of LEEP grew dissatisfied with Nordstrom's lack of communication about the affairs of LEEP with shareholders and other officers and directors of LEEP.  They also concluded that Nordstrom was operating LEEP as though he were its sole owner and frustrating efforts to have another director elected to the Board of Directors so that LEEP would have a fully functioning Board of Directors.

30.     On August 31, 2020 at a duly called special shareholder meeting at which a quorum was present and acting throughout, LEEP shareholders elected a new Board of Directors which did not include Nordstrom.

31.     On the same day, the newly elected Board removed Nordstrom as Chief Executive Officer and replaced him with W. Scott Record ("Record").

32.     Upon information and belief, shortly after the August 31, 2020 special shareholder meeting, Zielke and ZLF advised Nordstrom of actions he could take to preserve his position as

CEO and their retention as counsel. Their recommended actions were part of a strategy they and Nordstrom implemented to undermine the validity of the actions taken by shareholders at the August 31, 2020 special shareholder meeting and cause the arbitrator in the Arbitration to fail to recognize the authority of Record and the new Board of Directors.

33.     Among the actions Zielke and ZLF recommended was the creation of a fictitious consent board of directors resolution authorizing the filing of the Arbitration and the retention of Zielke and ZLF that Zielke and ZLF knew had not been signed by all LEEP's directors. Nordstrom was to send this consent resolution to the arbitrator in the Arbitration so the trial in the Arbitration scheduled for the end of September 2020 would not be delayed.

34.     On September 13, 2020, Nordstrom and ZLF were provided formal notice of Nordstrom's removal as CEO of LEEP. See Exhibit 1.

35.     On September 16, 2020, the new LEEP Board of Directors engaged Ziliak Law, LLC ("Ziliak Law") as counsel, and caused Ziliak Law to file an appearance on its behalf in the Arbitration, expressly withdrawing all other appearances made by counsel. See Exhibit 2.

36.     On September 17, 2020, the American Arbitration Association informed LEEP that it would only recognize ZLF as counsel for LEEP, unless or until an Agreed Order for Substitution of Counsel or a Motion for Substitution of Counsel was filed in the Arbitration. See Exhibit 3.

37.     The AAA also advised LEEP that if ZLF did not consent to the substitution, an issue was raised as to the control and authority of LEEP, as well as whether the Arbitration can be conducted without first resolving the issue, and that a Zoom meeting would be scheduled on these issues for Monday, September 21, 2020, at 2:00 p.m. See Exhibit 3 (email dated September 17, 2020 from AAA).

38.     On September 18, 2020, Ziliak Law forwarded a letter to Zielke of ZLF requesting that the firm either consent to the substitution of counsel or provide a legal basis as to any refusal. Ziliak Law further advised that any action taken on LEEP's behalf would be invalid and in express violation of LEEP's express instructions. See Exhibit 4.

39.     In violation of its duty to LEEP as attorney, Zielke and ZLF not only did not respond to Ziliak Law's request to consent to the substitution of counsel, they argued to the arbitrator that the new Board of Directors of LEEP was not validly elected and that Nordstrom had not been validly replaced by Record as Chief Executive Officer.

40.     LEEP, by Ziliak Law, filed a Motion to Accept Notice of Appearance or, in the Alternative, to Stay Arbitration, moving the arbitrator to accept its Notice of Appearance and revoke all others, or in the alternative stay the Arbitration for 60 days to provide LEEP with adequate time to resolve the issue of control of the corporation. See Exhibit 5.

41.     In opposition, ZLF filed an objection to the substitution and inclusion of Record and Ziliak Law as counsel for LEEP in violation of its duty to LEEP. See Exhibit 6.

42.     Nordstrom, joined by ZLF and Zielke, challenged the authority of Record and the new Board claiming the Board was not properly elected and opposed any postponement of the trial and LEEP's selection of new counsel. Zielke and ZLF refused to consent to ZLF's replacement as counsel for LEEP.

43.     On September 21, 2020, the AAA ruled that because ZLF did not consent to the substitution of counsel and the issue of control and authority of the corporation was not before the arbitrator, the Arbitration would continue as scheduled for the end of September with ZLF as counsel for LEEP. See Exhibit 7.

44.     In a separate legal proceeding LEEP has filed against Nordstrom in the U.S. District Court in Oregon captioned LEEP, Inc. v. Nordstrom et al. Case No.6:20-cv-01673-MC (the "Oregon Case"), LEEP has alleged that Nordstrom has breached his fiduciary duty to LEEP in a number of respects, including, but not limited to:

a.      Breaching his contract of employment by failing to keep the other members of the Board of Directors apprised of material events affecting LEEP;

b.      Breaching his fiduciary duty to LEEP as a director and officer by, among other things, materially misrepresenting the terms of the Settlement Agreement to facilitate his misappropriation of LEEP's settlement proceeds;

c.      Attempting to frustrate the efforts of another director and other shareholders from convening a shareholder meeting to elect the required number of directors so that LEEP would have a fully functioning Board of Directors; and

d.      Refusing to acknowledge instructions and directives of the duly elected Board of Directors of LEEP and its newly appointed CEO, Record.

45.     As part of the Oregon Case, LEEP moved for a preliminary injunction to enjoin the Arbitration.  A consent order was entered which permitted the Arbitration to proceed but no arbitral award could be made until who controlled LEEP was determined.  Pending the determination on the issue of whether the new Board was properly elected, Nordstrom properly removed and Record properly appointed as Chief Executive Officer, Record and the new Board of Directors were not to take any actions with respect to LEEP and Nordstrom could not settle the Arbitration. See Exhibit 8.

46.     Zielke and ZLF, in conjunction with Nordstrom, conducted the trial of the Arbitration without any consultation with Record or any authorized representative of LEEP.

47.     Upon information and belief, ZLF and Zielke, rather than focusing on the undisputed violations of the Settlement Agreement by OVC, focused almost exclusively on a speculative business opportunity on which Nordstrom was relying as a basis for claiming large damages he alleged LEEP suffered when OVC refused to fill the order for LeepCore panels without a substantial up-front payment.

48.     After the trial in the Arbitration, without the consent of LEEP, the judge in the Oregon Case lifted the stay prohibiting the entry of an arbitral award. The arbitrator in the Arbitration issued an interim award dated November 8, 2020.  As part of the interim award, LEEP and OVC were required to provide position papers on the issue of award of attorneys fees.  Zielke and ZLF provided LEEP's position on the attorneys fees again without any consultation with LEEP's Board of Directors, Record or LEEP's selected counsel Ziliak Law.

49.     The final arbitral award dated December 28, 2020 was issued but not released until February 11, 2021. The final award found that OVC had breached the Settlement Agreement and caused damages, including attorneys fees of $26,655.15. However, the arbitrator found that since LEEP's main basis for the alleged breach of the Settlement Agreement was OVC's demand for an up-front payment for the large order it declined and OVC prevailed on that issue, the arbitrator ruled that OVC was the prevailing party and made a net award to OVC of its attorneys fees in the amount of $130,021.95.

50.     Zielke and ZLF filed a complaint in the name of LEEP in the Fayette  Circuit Court in Kentucky on April 15, 2021 to vacate the arbitral award on various grounds in an action captioned LEEP v. Outdoor Venture Corporation Case No. 21-CI-01138 (Fayette (KY) Circuit Court (the "Kentucky Case").

51.     On October 14, 2021, the judge in the Oregon Case issued a Declaratory Judgment (the "Declaratory Judgment") finding that effective August 31, 2020 the new Board of LEEP was duly elected, Nordstrom properly removed as Chief Executive Officer and Record properly appointed as the new Chief Executive Officer of LEEP. The Declaratory Judgment also gave LEEP the right to reject in whole or in part the arbitral award as well as the agreement pursuant to which alleged breaches of the Settlement Agreement were to be resolved by arbitration. A copy of the Declaratory Judgment is attached as Exhibit 9.

52.     It was not until the issuance of the Declaratory Judgment that Zielke and ZLF formally moved to withdraw as counsel for LEEP in the Kentucky Case and ceased representing LEEP in any capacity. ZLF sent counsel for LEEP in the Oregon Case a copy of the order approving their withdrawal as LEEP's counsel in the Kentucky Case.  At about the same time ZLF sent the case file on the Arbitration to LEEP.

53.     It was only when Plaintiff's counsel in the Oregon Case received a copy of the order approving ZLF's withdrawal as counsel did LEEP and its counsel learn of the existence of the Kentucky Case.

54.     The order approving ZLF's withdrawal as counsel for LEEP gave LEEP 45 days to obtain replacement counsel.  Before the expiration of the 45 days, LEEP's Oregon Case counsel requested an additional 45 days to obtain replacement counsel because Nordstrom had failed to comply with the Declaratory Judgment requiring him to turn over all LEEP's corporate records to Record and LEEP was missing critical information it needed to decide how it wanted to proceed in the Kentucky Case and the Arbitration. Nordstrom's failure to provide records resulted in a motion for contempt and an order of contempt.  To date Nordstrom still has not complied with the order to return records.

55.     In March 2022, in reliance on the Declaratory Judgment, LEEP notified the judge in the Kentucky Case, that it was rejecting the arbitral award because it had been conclusively determined that Nordstrom, Zielke and ZLF had no authority to act for LEEP in any capacity after August 31, 2020, including conducting the trial in the Arbitration in the name of LEEP or filing any position papers on attorney fees.  LEEP sought to dismiss the complaint in the Kentucky Case without prejudice as the Arbitration would have to be recommenced with LEEP's duly authorized representatives acting for it

56.     OVC then sought confirmation of the arbitral award and opposed dismissal of the Kentucky Case.  Ultimately an order was issued in the Kentucky Case confirming the award. LEEP has moved to alter, amend or vacate the confirmation order due to a material misunderstanding of the facts by the judge that issued the order confirming the arbitral award. That motion is sub judice.

57.     In or about June - July 2021, prior to the issuance of the Declaratory Judgment, Record learned of the existence of a bank account at PNC Bank that was called a dba LEEP account.  Through a subpoena issued to PNC Bank, LEEP learned that Nordstrom had opened a personal bank account in his name but deceptively named "John H Nordstrom dba LEEP" (this account is referred to as the "PNC Nordstrom Account").  The address for the account was Nordstrom's home address.

58.     In or about September 2021, Record obtained a copy of Settlement Agreement. When Record obtained the Settlement Agreement, it was the first time LEEP had learned of the actual terms of the settlement.

59.     The Settlement Agreement stated that in addition to forgiveness of debt, OVC and the other defendants to the Original Suit were to make a cash payment to LEEP of $900,000. This

payment was to be made on behalf of the various defendants by several insurance companies who represented the defendants in the Original Suit.

60.     The Settlement Agreement required that the $900,000 to be paid LEEP  be paid by checks issued to LEEP and its attorney Zielke.

61.     From communications with the insurance companies that issued the checks to pay the $900,000 cash portion of the settlement, LEEP learned to whom the checks were issued and in most cases how the checks were endorsed.  By in or about the end of October or the beginning of November 2021, LEEP had learned that the settlement proceeds were paid in checks issued to ZLF and LEEP or to ZLF alone.

62.     It was in or about November 2021 that LEEP had obtained enough information about the Settlement Agreement and where the settlement proceeds were deposited that it learned of the breaches of duty and negligence of Zielke and ZLF.

63.     In April 2022, the complaint in the Oregon Case was amended to add as parties defendant Zielke and ZLF and asserted claims against them for breach of the Kentucky and Oregon rules of Professional Conduct.  The claims against them were dismissed without prejudice for lack of personal jurisdiction by order entered December 5, 2022 in the Oregon Case.

64.     As attorney for Plaintiff in the Original Suit and thereafter, ZLF had a fiduciary duty to Plaintiff which was governed by, and delineated in, rules of professional conduct promulgated by the Kentucky Supreme Court.

65.     Under Kentucky Supreme Court Rule ("SCR") 3.130–1.15(b) ZLF was required to notify Plaintiff when it received any of the settlement proceeds payable to Plaintiff. The same rule required ZLF to promptly deliver to Plaintiff those funds from the settlement to which it was entitled.

12

66.      SCR 3.130–1.15(c) requires that an attorney who comes into possession of property in which two or more people have an interest (one of which can be the attorney) those funds should be kept separate by the attorney and then promptly delivered to the appropriate person the funds to which they are entitled and is undisputed.

67.      SCR 3.130–1.15 requires that the attorney hold property with the care of a professional fiduciary as described in the ABA Model Rules of Professional Responsibility.

68.      Upon information and belief, ZLF received checks payable to it and LEEP or to ZLF alone in the aggregate amount of $900,000 pursuant to the Settlement Agreement.

69.      Upon information and belief, ZLF claimed $140,000 was owed it from the settlement proceeds for attorneys fees it was owed for the representation of LEEP in the Original Suit and otherwise.

70.      Upon information and belief, of the $900,000 payable to LEEP under the Settlement Agreement, $807,500 was paid in checks made payable to LEEP and ZLF and one check in the amount of $92,500 was made payable solely to ZLF.

71.      Under SCR 3.130–1.15(c) of the Kentucky Rules of Professional Conduct, those checks made jointly to LEEP and ZLF should have been endorsed by LEEP and the endorsed check taken by ZLF, endorsed by ZLF and the checks so endorsed deposited into ZLF's attorney escrow account.  The one check made payable solely to ZLF, since it was part of LEEP's settlement payment, should have been endorsed by ZLF and deposited into ZLF's escrow account. After deducting its $140,000 in claimed attorneys fees, ZLF should have issued its attorney escrow check(s) in the aggregate amount of $760,000 made payable to LEEP or sent by wire transfer amounts aggregating the $760,000 balance due LEEP to LEEP's bank account.

72.     Upon information and belief, Zielke and ZLF failed to adhere to the Kentucky Rules of Professional Conduct and instead negligently disbursed the $760,000 due LEEP in the following manner:

a.     ZLF issued its escrow check in the amount of $577,500 to Nordstrom and not to LEEP;

b.     A check for $90,000 issued by Grange Mutual Casualty Company made payable to ZLF end LEEP was endorsed in blank by ZLF and delivered to Nordstrom who endorsed the check for LEEP;

c.     A check for $92,5000 issued solely to ZLF was endorsed in blank by ZLF and delivered to Nordstrom.

d.     All of the checks described in this ¶72 delivered to Nordstrom were deposited in the PNC Nordstrom Account.

73.     Upon information and belief none of the proceeds of the checks described in ¶72, above, were received by LEEP or used for the benefit of LEEP.

74.     Upon information and belief, Zielke and ZLF first acted as counsel for LEEP prior to their retention to prosecute the Original Suit on behalf of LEEP.

75.     Zielke and ZLF continuously represented LEEP in all litigation matters pending in Kentucky as well as providing LEEP advice on non corporate matters.

76.     Zielke and ZLF were retained to represent LEEP in the Arbitration.  Even when they were instructed by Record that they no longer represented LEEP, they continued to purport to represent LEEP.

77.     Upon information and belief Zielke and ZLF never communicated the terms of the Settlement Agreement, the basis for the claims it was asserting on LEEP's behalf in the

Arbitration or discussed any of the other matters with respect to which they advised LEEP with any representative of LEEP other than Nordstrom.

78.    Nordstrom deliberately did not disclose the terms of the Settlement Agreement and when specifically asked about the terms by a director materially misrepresented the terms of the Settlement Agreement to conceal his misappropriation of the settlement proceeds for himself.

79.    Zielke and ZLF continuously represented LEEP or purported to represent LEEP from not later than the commencement of the Original Suit until the Declaratory Judgment was issued. Only after the Declaratory Judgment was issued did Zielke and ZLF withdraw as counsel in the Kentucky Case and otherwise cease purporting to represent LEEP in any matter or capacity.

> AS AND FOR LEEP'S FIRST CLAIM FOR
> RELIEF AGAINST ZIELKE AND ZLF, LEEP
> ALLEGES AS FOLLOWS
> (Breach of Duty to Organization)

80.    LEEP repeats and realleges the allegations of paragraphs 1- 79 hereof with the same force and effect as though fully set forth at length herein.

81.    Zielke and ZLF were retained by Nordstrom to act as counsel for LEEP in the Original Suit.

82.    Zielke and ZLF were also retained by Nordstrom to act as counsel for LEEP in the Arbitration.

83.    Even after Zielke and ZLF were terminated as counsel for LEEP, they continued to maintain that they were LEEP's counsel in the Arbitration  and the Kentucky Case.

84.    Upon information and belief, Zielke and ZLF also provided legal services to LEEP in addition to its representation of LEEP in the Original Suit and the Arbitration.

85.     Upon information and belief, Zielke and ZLF understood and agreed that they were representing LEEP and not Nordstrom personally.

86.     Upon information and belief, Zielke and ZLF allowed monies payable to LEEP to be deposited into ZLF's escrow account by customers of LEEP.

87.     Upon information and belief, Zielke and ZLF have failed to account to LEEP for such monies and upon information and belief, Zielke and ZLF negligently delivered those funds to Nordstrom rather than LEEP.

88.     Upon information and belief, Zielke and ZLF undertook the representation of Nordstrom by advising him with respect to actions Nordstrom should take to deny LEEP shareholders access to the LEEP shareholder list and otherwise prevent LEEP shareholders from communicating with other LEEP shareholders and to prevent such shareholders from calling a special shareholder meeting.

89.     Zielke's and ZLF's representation of, and advice to, Nordstrom were in conflict with their duty of representation of LEEP contrary to the requirements of Kentucky Rule of Professional Conduct 1.7 and Oregon Rule of Professional Conduct 1.7.

90.     When the new board of directors was elected at the special shareholder meeting on August 31, 2020, the new Board of Directors was the highest authority in LEEP.

91.     When the new Board of Directors replaced Nordstrom as Chief Executive Officer and appointed Record as the new Chief Executive Officer, this decision was communicated to Zielke and ZLF.

92.     Pursuant to Kentucky Rule of Professional Conduct 1.13 and Oregon Rule of Professional Conduct 1.13, as representative of LEEP, Zielke and ZLF were required to follow the instructions of Record as LEEP's newly appointed Chief Executive Officer.

93.     In breach of their duty of professional conduct, Zielke and ZLF refused to accept the directions of Record and refused to provide him with all information related to the subjects of the Arbitration.

94.     In violation of their duty to LEEP, Zielke and ZLF not only refused to accept the directions of Record, but actively supported Nordstrom in challenging the authority of the new Board of Directors and Record's authority as Chief Executive Officer.

95.     Zielke's and ZLF's support of Nordstrom in challenging the authority of the new Board of Directors and the authority of Record as Chief Executive Officer violated the requirements of Kentucky Rule of Professional Conduct 1.7 and Oregon Rule of Professional Conduct 1.7.

96.     Zielke and ZLF also refused to accept the direction of Record that Zielke and ZLF were relieved of their role as attorney for LEEP in the Arbitration and actively argued to the arbitrator that the Arbitration should continue with ZLF representing LEEP under the direction and control of Nordstrom.

97.     As a result of Zielke's and ZLF's breaches of duty to LEEP, LEEP was damaged in multiple ways, including, but not limited to, having the Arbitration proceed without LEEP having the legal representation of its choice and having material breaches of the Settlement Agreement not included in the matters subject to arbitration.

98.     As a result of Zielke's and ZLF's breaches of duty, an arbitral award was entered against LEEP that, if allowed to stand, requires LEEP to make a $130,021.95 payment to OVC and has caused, and continues to cause, LEEP  to incur substantial legal fees and costs to challenge the validity of the arbitral award.

AS AND FOR LEEP'S SECOND CLAIM FOR
RELIEF AGAINST ZIELKE AND ZLF, LEEP
ALLEGES AS FOLLOWS
(Breach of Duty of Competence )

99.     LEEP repeats and realleges the allegations of paragraphs 1- 98 hereof with the same force and effect as though fully set forth at length herein.

100.     As attorney for LEEP in the Arbitration, Kentucky Rule of Professional Conduct 1.1 and Oregon Rule of Professional Conduct 1.1 required Zielke and ZLF to provide LEEP with competent representation in the Arbitration.

101.     The relevant portion of paragraph 2(g) of the Settlement Agreement provides "any dispute arising out of or related to this business relationship shall be resolved by binding arbitration".

102.     When Nordstrom challenged the authority of LEEP's Board of Directors to remove him as Chief Executive Officer and replace Zielke and ZLF as counsel, any competent attorney would immediately recognize that whether LEEP's Board of Directors had been duly elected and Nordstrom replaced as Chief Executive Officer was not within the scope of matters to be arbitrated under the Settlement Agreement because it had nothing to do with the business relationship between LEEP and OVC.

103.     To the extent Zielke and ZLF had any question about the authority of LEEP's new Board of Directors and the new Chief Executive Officer to terminate Nordstrom and ZLF and take control of LEEP's prosecution of the Arbitration, the only reasonable action any competent attorney could take was to urge a postponement of the Arbitration until control of LEEP was determined in an appropriate court of competent jurisdiction.

104.     Instead of demanding the Arbitration be postponed, Zielke and ZLF breached their duty by actively arguing before the arbitrator that the Arbitration proceed under the direction of

18

Nordstrom with ZLF as counsel for LEEP. Zielke and ZLF compounded their negligent representation by refusing to agree to substitute counsel of LEEP's choice, the Ziliak Firm, for ZLF.

105.    In addition, in prosecuting the trial in the Arbitration, Zielke and ZLF failed to focus their attention on the clear breaches of the Settlement Agreement by OVC such as the improper direct sales of panels by OVC.  Instead, Zielke and ZLF focused the argument for breach of the Settlement Agreement by OVC on OVC's requirement for an up front payment on an order LEEP submitted based on a speculative hope for a large contract that would require the panels LEEP ordered to complete.

106.    Upon information and belief, Nordstrom had not obtained for LEEP a firm order for finished products that would require the number of panels LEEP ordered from OVC.  There was no basis for believing that LEEP would suffer any damages if the panels ordered were not provided as it had no contract for which they could be used.  Further, upon information and belief, at the time LEEP placed the order, it lacked the financial resources to pay for the products ordered.

107.    A competent attorney would have focused the presentation on those acts of OVC that were clear breaches of the Settlement Agreement rather than on speculative damages based on a non existent large contract.

108.    As a result of Zielke's and ZLF's breaches of the duty of competence, LEEP has been damaged by an amount to be determined at trial but which damages include, but are not limited to (1) a finding that ZLF is not entitled to any compensation for its purported representation of LEEP after it was notified of its replacement as counsel for LEEP and that Nordstrom had been replaced as Chief Executive Officer of LEEP, (2) a finding that as a result of ZLF and Zielke negligently focusing only on a speculative theory of damage it resulted in

damages to LEEP of not less than (a) $130,021.95 for the arbitral award against LEEP for $130,021.95, (b) $21,102.76 in damages and interest LEEP suffered as found by the arbitrator plus attorneys fees of $138,809.71, and (c) the expenses and legal fees LEEP has incurred and continues to incur to vacate the arbitral award.

AS AND FOR LEEP'S THIRD CLAIM FOR
RELIEF AGAINST ZIELKE AND ZLF, LEEP
ALLEGES AS FOLLOWS
(Breach of Duty of Safekeeping Property )

109.    LEEP repeats and realleges the allegations of paragraphs 1- 108 hereof with the same force and effect as though fully set forth at length herein.

110.    In or about 2013, Nordstrom retained ZLF to represent LEEP in the Original Suit.

111.    The lead attorney for ZLF prosecuting the Original Suit on behalf of LEEP was Zielke.

112.    Zielke and ZLF  represented LEEP in the Original Suit throughout its prosecution up to and including settlement of the Original Suit.

113.    Under the terms of the Settlement Agreement certain debt of LEEP was terminated without further liability of LEEP. In addition a cash payment of $900,000 was to be made to LEEP.

114.    Other than communicating with Nordstrom, Zielke and ZLF never communicated with any other representative of LEEP about the Settlement Agreement or any of the terms thereof.

115.    As attorney for LEEP in the Original Suit, Zielke and ZLF had a fiduciary duty to Plaintiff which was governed by, and delineated in, the Kentucky Rules of Professional Conduct and the Oregon Rules of Professional Conduct.

20

116.    Zielke and ZLF had a fiduciary obligation to deposit into ZLF's escrow account the $900,000 in checks made payable to ZLF and LEEP and the one check made payable to ZLF representing all the cash portion of the settlement proceeds. After deducting  the $140,000 owed ZLF,  issuing ZLF's attorney escrow check solely to LEEP, or alternatively wiring the balance to LEEP's bank account.

117.    As a result of Zielke's and ZLF's failure to carry out its fiduciary duty to LEEP, all $760,000 of the net settlement proceeds payable to LEEP were misappropriated by Nordstrom.

PRAYER FOR RELIEF

WHEREFORE, Plaintiff LEEP Inc. prays for judgment as follows:

1.    For its First Claim for Relief as to ZLF and Zielke, LEEP respectfully prays that this Court enter judgment in its favor and against Zielke and ZLF, jointly and severally, for breach of their fiduciary duty to LEEP as set forth in Kentucky and Oregon Rules of Professional Conduct 1.7 and 1.13 in an amount to be determined at trial.  LEEP further prays that this Court grant any other appropriate remedy at law or in equity.

2.    For its Second Claim for Relief as to ZLF, LEEP respectfully prays that this Court enter judgment in its favor and against Zielke and ZLF, jointly and severally, in an amount of not less than $140,000 plus interest for legal fees ZLF was paid for incompetent representation and for breach of their fiduciary duty to LEEP as set forth in Kentucky and Oregon Rules of Professional Conduct 1.1 to provide competent representation. LEEP further prays that this Court grant any other appropriate remedy at law or in equity.

3.    For its Third Claim for Relief as to Zielke and ZLF, LEEP respectfully prays that this Court enter judgment for not less than $760,000 plus interest in its favor and against Zielke and ZLF, jointly and severally, for breach of their fiduciary duty to LEEP to deliver monies in

their possession due LEEP and not Nordstrom as set forth in Kentucky Rule of Professional

Conduct 3.130–1.15(b) and Oregon Rules of Professional Conduct 1.15(d). LEEP further prays

that this Court grant any other appropriate remedy at law or in equity.

    4.    For such other and further relief as this Court may deem just and appropriate.

DEMAND FOR JURY TRIAL

Plaintiff demands trial by jury on all issues.


DATED: January 4, 2023

        Arnold & Miller, PLC
        /s Christopher D. Miller
        Christopher D. Miller
        Email:  cmiller@arnoldmillerlaw.com
        121 Prosperous Place, Suite 6B
        Lexington, KY 40509
        Ph. (859) 381-9999
        Fax: (859) 389-6666
        Counsel for LEEP, Inc.

        Law Offices of Richard D. Gaines, Esq.
        /s Richard D. Gaines
        Richard D. Gaines
        Email: rdenisgaines@earthlink.net
        PO Box 943
        102 Sugarberry Lane
        Greentown, PA 18426-0943
        Ph. 570-857-0180
        Fax 570-857-0181
        Counsel for LEEP, Inc.
        Pro hac vice application pending