## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## LOUISVILLE DIVISION

### *Electronically Filed*

LEEP, INC., an Oregon corporation,

    Plaintiff,

v.                        Case no. 3:23-cv-0008-DJH

LAURENCE ZIELKE, an individual and
ZIELKE LAW FIRM, PLLC, a Kentucky
Professional Limited Liability Company

    Defendants.

### MEMORANDUM IN SUPPORT OF
### MOTION FOR SUMMARY JUDGMENT

Defendants Laurence Zielke and Zielke Law Firm, PLLC ("Zielke, *et al.*"), by counsel, submit this *Memorandum in Support of Motion for Summary Judgment* pursuant to FRCP 56.

### I.    INTRODUCTION

"[T]he Parties [*i.e.*, Plaintiff LEEP, Inc. and Outdoor Venture Corporation] ... expressly release and discharge each Party and all of their ... attorneys ..."[1]

Zielke, *et al.* are entitled to summary judgment because Plaintiff LEEP, Inc.'s ("LEEP") claims have been released pursuant to the March 7, 2023 *Settlement Agreement and Mutual Release* ("the 2023 *Settlement Agreement*") entered between

---

[1] Ex. 1, 2023 *Settlement Agreement*, para. 1. The 2023 *Settlement Agreement*, which is the focus of this *Motion*, refers to LEEP and OVC as "the Parties." In the interest of clarity, Zielke, e*t al.* adopt the term "the parties" for collective reference to LEEP and OVC for the purposes of this *Motion* only.

LEEP and Outdoor Venture Corporation ("OVC"). That agreement provides that "the Parties ... release and discharge each Party and all of their ... attorneys ... from any and all claims [and] ... lawsuits ... arising from or relating to any matter between them."[2] The plain language of this clause unambiguously extends to the parties' own attorneys. The use of the plural possessive "their" in the phrase, "the Parties ... release each Party and all of their ... attorneys" refers collectively to the attorneys of both parties. This stands in contrast to "its attorneys," a phrase that would have limited each party's release to claims against the other party's counsel.

This interpretation is consistent with other provisions of the 2023 *Settlement Agreement* that express the parties' intent. The parties expressly stated their intent to release all claims in the broadest possible terms, stating that they "waive all claims—*in the broadest possible interpretation*—arising from or relating to any matter between them, of any nature whatsoever from the beginning of the world to the present date."[3] The parties also stated their shared intent "to have no further contact in any capacity," an intent that would be thwarted by re-litigation of issues from the arbitration that is a basis for LEEP's claims in this action.

The 2023 *Settlement Agreement* was executed by W. Scott Record, CEO of LEEP, not by its then-counsel Richard Gaines, nor its former counsel, Zielke, *et al*.[4] Accordingly, a construction of the 2023 *Settlement Agreement* as dispositive of claims against Zielke, *et al*. does not implicate SCR 3.130(1.8)(h)(1), which governs a lawyer's conduct in prospectively limiting liability to a client. In short, whether ethics rules limit

---

[2] *Id*.
[3] *Id*.
[4] *See id*. at p. 3.

the reach of the 2023 *Settlement Agreement* to any hypothetical claims against a party's current counsel is a matter of conjecture and an academic exercise not necessary to resolution of the question presented to the Court: *whether the phrase "all of their … attorneys" includes the parties' own former attorneys, who had no role in negotiating or drafting the 2023 Settlement Agreement.*

Because there is no genuine issue of material fact that the 2023 *Settlement Agreement* is valid, unambiguous, and releases all claims LEEP now asserts, summary judgment is warranted as a matter of law.

## II.    UNDISPUTED FACTS AND RELEVANT PROCEDURAL HISTORY

This case began four years ago in the Oregon District Court. It involves allegations of legal negligence in connection with Zielke, *et al*.'s representation of LEEP in an arbitration and two state court proceedings (collectively, "the OVC litigation"), all against OVC.

***The 2013 Lawsuit***. LEEP is in the steel panel manufacturing business. It entered a joint venture with OVC to create a new company to manufacture and assemble steel panels.[5] In 2013, after the joint venture terminated, LEEP engaged Zielke, *et al*. as counsel to represent LEEP in a lawsuit in Jefferson Circuit Court against OVC ("the 2013 lawsuit").[6]

In 2016, LEEP and OVC entered the 2016 *Settlement Agreement* resolving the 2013 lawsuit that required arbitration of any future dispute between the parties.[7] Pursuant to the 2016 *Settlement Agreement*,  OVC caused settlement payments to be

---

[5] *See* DN 1, *Compl.*, para. 16-19.
[6] *Id*., para. 20.
[7]  *See* DN 1, *Compl.*, para. 24.

made to LEEP in 2016 totaling $900,000.[8] Nordstrom's alleged wrongful distribution of these settlement payments to himself, also in 2016, forms the basis for LEEP's third claim against Zielke, *et al.* in this lawsuit, *i.e.*, the *Settlement Agreement* claim.[9]

**The Arbitration**. OVC breached the 2016 *Settlement Agreement*. On August 15, 2019, LEEP, through counsel Zielke, *et al.*, demanded arbitration ("the arbitration"), seeking damages, attorney fees, interest, and costs.[10] At the time of the arbitration demand, Nordstrom remained CEO of LEEP. The arbitration was conducted in September 2020.[11]

By the time the arbitration was conducted, control of LEEP was in dispute.[12] Efforts were underway to oust Nordstrom as CEO, and LEEP filed suit in Oregon's U.S. District Court ("the Oregon federal court") to prevent Nordstrom from proceeding with the arbitration.[13] LEEP's allegation that Zielke, *et al.* advised Nordstrom in resisting his removal forms the basis for LEEP's first claim against Zielke, *et al.* in the instant action, *i.e.*, the Organization claim.[14]

Control of LEEP was not one of the subjects committed to arbitration in the 2016 *Settlement Agreement*, and the Oregon federal court had not yet ruled on the validity of Nordstrom's removal at the time of the September 2020 arbitration.[15] Accordingly, LEEP stipulated to allow the arbitration to occur as planned, *i.e.*, with LEEP represented

---

[8] *Id.* at para. 59.
[9] *Id.* at para. 78.
[10] *Id.* at para. 28.
[11] *Id.* at para. 43, 45.
[12] *Id.* at para. 30.
[13] *Id.* at para. 44.
[14] *Id.* at para. 80-98.
[15] *See id.* at para. 43, 45.

by Zielke, *et al*.[16] The final award, entered on December 28, 2020, found partially in favor of and partially against LEEP, and awarded OVC attorney's fees and costs of $136,137.70.[17]

**The Oregon Lawsuit**. LEEP, through then-counsel Richard Gaines, sued Nordstrom in the Oregon federal court on September 25, 2020.[18] On October 14, 2021, that court held that Nordstrom's removal as CEO and Director was valid and that Scott Record was the duly appointed CEO of LEEP.[19] One month later, in November 2021, Zielke, *et al*. produced, and a representative of LEEP took possession of, thirteen bankers' boxes comprising all client files for LEEP and a flash drive containing scanned and searchable versions of the documents in the bankers' boxes.[20]

On April 21, 2022, LEEP filed its *Amended Complaint* in that forum asserting three claims against Zielke, *et al*.[21] The claims were dismissed for lack of personal jurisdiction and venue on December 5, 2022.[22] The Ninth Circuit Court of Appeals affirmed the dismissal on September 17, 2024.[23]

LEEP's Oregon lawsuit against Nordstrom has been settled. The parties filed a *Joint Status Report* on April 17, 2025 confirming that they entered a *Settlement Agreement* ("the 2025 *Settlement Agreement*") on March 15, 2025.[24] The agreement

---

[16] *Id*. at para. 45.
[17] *Id*. at para. 49; DN 13-5, *Final Award*.
[18] *See* DN 1, Compl., para. 44; DN 13-3, District of Oregon *First Amended Complaint*.
[19] *See* DN 1, *Compl*., para. 51.
[20] *See* DN 45-1, September 15, 2023 District of Oregon *Opinion and Order*, p. 4 (denying post-judgment relief based on "newly discovered evidence" contained in the bankers' boxes and flash drive delivered in November 2021).
[21] DN 13-3, District of Oregon *First Amended Complaint*.
[22] DN 13-7, District of Oregon *Opinion and Order* of December 5, 2022.
[23] Ex. 2, Ninth Circuit *Order Affirming Dismissal*.
[24] *See* Ex. 3, District of Oregon *Joint Status Report* of April 17, 2025.

provides that Defendant Nordstrom will return approximately 190,625,000 shares of LEEP stock, representing 15.89% of the company's outstanding shares.[25]

*The 2021 Lawsuit*. On April 15, 2021, LEEP filed suit, by counsel Zielke, *et al.*, in Fayette Circuit Court to vacate or modify the arbitration award ("the 2021 lawsuit"). The 2021 lawsuit was the final case or matter in which Zielke, *et al.* represented LEEP. Zielke, *et al.* withdrew after the October 14, 2021 *Order* of the Oregon District Court.[26]

Nearly a year after Zielke, *et al.* withdrew from representing LEEP in that action and after LEEP had obtained other counsel, the Fayette Circuit Court entered summary judgment disposing of all of LEEP's claims.[27] LEEP did not appeal this ruling, but sought—*and was denied*—post-judgment relief.[28]

The 2023 *Settlement Agreement*, dated March 7, 2023, resolved the 2021 lawsuit and now negates LEEP's claims in this action. It provided in part:

> Mutual Release. In consideration of the promises contained herein, and in consideration of the Parties' **agreement to waive all claims—in the broadest possible interpretation—the Parties**, with the intention of binding themselves, and all of their assigns, predecessors and successors in interest, do hereby expressly **release and discharge each Party and all of their** insurers, assigns, **attorneys**, affiliates, officers, directors, shareholders, members, employees, agents, predecessors and successors in interest from any **and all claims**, demands, debts, obligations, liabilities, **lawsuits**, costs, court costs, expenses and attorneys' fees **arising from or relating to any matter between them, of any nature whatsoever from the beginning of the world to the present date**.[29]

*The Dismissed Nordstrom Indictment*. On August 4, 2021, Nordstrom was indicted in the Western District of Kentucky on eight counts of wire fraud and one count

---

[25] Ex. 4, 2025 *Settlement Agreement*.
[26] DN 13-6, Fayette Circuit Court *Order*.
[27] *See* DN 13-4, Fayette Circuit Court *Order (as Amended)* of January 23, 2023.
[28] *See* Ex. 5, Fayette Circuit Court *Order* of January 23, 2023.
[29] Ex. 1, 2023 *Settlement Agreement*, para. 1 (emphasis added).

of money laundering in connection with LEEP's allegations as to the 2016 *Settlement Agreement* proceeds.[30] A superseding indictment was filed on September 7, 2021.[31] Both indictments were dismissed, *with prejudice*, on June 3, 2022.[32] It is believed that once Nordstrom provided both his *Employment Agreement* and *Unanimous Consent Resolutions* to the WDKY U.S. Attorney's Office—*clearly establishing that Nordstrom was authorized to and had full authority to not only open bank accounts for the benefit of LEEP, at his discretion and as the only signatory, but to also settle all LEEP debts*—the essential criminal elements of both wire fraud and money laundering were seen as unprovable.[33]

**This lawsuit**. LEEP filed its *Complaint* in this Court on January 4, 2023.[34] It asserted the three claims that had just been dismissed in the Oregon District Court.[35] On March 6, 2023, Zielke, *et al.* filed its *Motion to Dismiss* as to LEEP's third claim, *i.e.*, the claim that Nordstrom wrongfully distributed to himself payments from OVC under the 2016 *Settlement Agreement* ("the *Settlement Agreement* claim").[36] That motion awaits adjudication.

On December 3, 2023, LEEP filed its *Motion to Amend* herein.[37] LEEP sought to add a claim under Oregon law based on an aider/abettor theory of civil conspiracy. This

---

[30] *See United States of America v. John H. Nordstrom*, 3:21-CR-00094-RGJ (W.D.Ky.), DN 1.
[31] *Id.* at DN 9.
[32] *Id.* at DN 26.
[33] *See* Ex. 6, May 6, 2022 *Declaration of John Nordstrom* with exhibits (filed as DN 145-1 in the Oregon federal action).
[34] DN 1.
[35] *See* DN 13-7.
[36] DN 13.
[37] DN 40.

claim was rejected by the Oregon federal court.[38] On January 16, 2024, Zielke *et al.* filed its *Response to Motion to Amend*, citing futility of the amendment because the new claim was time-barred for the same reasons as the *Settlement Agreement* claim.[39]

The *Motion to Amend* awaits adjudication. On March 21, 2024, this Court *sua sponte* administratively remanded it pending a hearing.[40] It likewise remanded the *Motion to Dismiss*, "to be reinstated if necessary following resolution of the motion for leave to amend."[41] On May 17, 2024, the Court held oral arguments on the *Motion to Amend* and requested supplemental briefing. On May 30, 2024, both LEEP and Zielke, *et al.* filed supplemental briefing.[42] On June 5, 2024, the Court returned the *Motion for Leave to Amend* to its active docket, where it remains submitted for consideration.[43]

**Discovery timeline**. Since June 2024, with the *Motion to Dismiss* and *Motion for Leave to Amend* awaiting adjudication, the parties' focus has been on discovery. On September 30, 2024, Zielke, *et al.* responded to all of LEEP's discovery requests.[44] LEEP has had all of Zielke, *et al.*'s initial discovery requests in its possession since at least November 4, 2024.

Zielke, *et al.*'s October 2024 *Requests for Admissions* propounded on LEEP have long been deemed admitted. On October 22, 2024, Zielke, *et al.* sent LEEP its initial discovery requests to Richard Gaines, LEEP's then-counsel. Shortly later, Mr. Gaines died.[45] On November 4, 2024 Zielke, *et al.* sent the same requests to Christopher Miller,

---

[38] *See* DN 45-1, District of Oregon *Opinion and Order*.
[39] DN 45.
[40] DN 53.
[41] *Id.*
[42] DN 58, 59.
[43] DN 60.
[44] See DN 63, Notice of Service.
[45] *See* DN 68.

LEEP's then-local counsel and current counsel.[46] On November 7, 2024, Miller confirmed receipt.[47] On November 11, 2024, counsel for Zielke, *et al.* granted extensions for its *Interrogatories* and *Requests for Production* and explained that timely responses to the *Requests for Admission* were necessary.

No later than December 11, 2024, Zielke, *et al.*'s *Requests for Admission* propounded on LEEP were deemed admitted by operation of law. On December 18, 2024, Zielke, *et al.* filed its *Notice of Admissions* confirming that fact.[48] On January 7, 2025—*more than two months after service of the Requests for Admission and nearly three weeks after Zielke, et al. filed the Notice of Admissions*—LEEP belatedly sent its *Responses to Requests for Admission*.

Approximately seven months have passed since Zielke, *et al.* propounded their *Requests for Admission*, and more than four months have passed since those requests were deemed admitted by operation of law. Despite this passage of time, LEEP has never requested this Court to grant relief from FRCP 36's clear, unambiguous mandate that the requests are admitted by operation of law.

On January 30, 2025, LEEP submitted its *Answers to Defendants' Interrogatories*. On February 3, 2025, LEEP submitted its *Supplemental Answers to Defendants' Interrogatories*. On March 17, 2025, LEEP submitted its *Response to Requests for Production*.

Finally, it should be noted that regarding the 2023 *Settlement Agreement* resolving the 2021 lawsuit that released LEEP's claims in this action, through 2025,

---

[46] *See* DN 72.
[47] *Id*.
[48] *Id*.

LEEP not only hid this *Settlement Agreement* from discovery production to Zielke, *et al.*, but went so far as denying its very existence.[49] The 2023 *Settlement Agreement* resolving the 2021 lawsuit that released LEEP's claims was ultimately obtained from OVC's counsel on February 12, 2025.[50]

**Matters awaiting adjudication**. The Court has not yet ruled on LEEP's *Motion to Amend Complaint*. In addition, Zielke, *et al.*'s *Motion to Dismiss* was administratively remanded pending resolution of the motion to amend.

An in-person settlement conference is scheduled for May 15, 2025. Zielke, *et al.* will attend in person, as will counsel for Zielke, *et al.* and the Vice President/Claims Counsel for its professional liability carrier.

### III.    LEGAL STANDARDS

#### A. Standard for Summary Judgment

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[51] The moving party bears the initial burden of identifying portions of the record that demonstrate the absence of a genuine issue of material fact.[52] Once the movant has met this burden, the nonmoving party must come forward with specific facts, supported by admissible evidence, showing that there is a genuine issue for trial.[53]

---

[49] *See* Ex. 7, January 30, 2025, *Email* (with attachments) from LEEP's counsel Christopher Miller.

[50] *See* Ex. 8, February 12, 2025, *Email* (with 2023 *Settlement Agreement*) from OVC's counsel John Sosbe.

[51] FRCP 56(a).

[52] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[53] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

A dispute is "genuine" only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.[54] A fact is "material" only if its resolution might affect the outcome of the lawsuit under the governing law.[55] "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."[56]

Importantly, the non-movant may not rest upon the allegations or denials in its pleadings but must present affirmative evidence establishing a genuine dispute of material fact.[57] Where the record taken as a whole "could not lead a rational trier of fact to find for the non-moving party," summary judgment must be granted.[58]

## B.  Standard for Interpretation of a Release of Claims

"An agreement to settle legal claims is essentially a contract subject to the rules of contract interpretation."[59] Interpretation and enforcement of a release is governed by state substantive law.[60] Pursuant to Kentucky law, general contract interpretation principles apply equally to a release as to other written instruments.[61] A release of claims is valid if it satisfies generally applicable contract requirements: *offer and acceptance, full and complete terms, and consideration*.[62]

Longstanding precedent confirms that the "primary object in construing a contract or compromise settlement agreement is to effectuate the intentions of the

---

[54] *Anderson*, 477 U.S. at 248.

[55] *Id.*

[56] *Id.* at 252.

[57] FRCP 56(c)(1)(A); *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992).

[58] *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989) (quoting *Matsushita*, 475 U.S. at 587).

[59] *Cantrell Supply, Inc. v. Liberty Mut. Ins. Co.*, 94 S.W.3d 381, 384 (Ky.App. 2002).

[60] *See Pope v. Carl*, 742 Fed. Appx. 123, 126 (6th Cir. 2018).

[61] *Id.*

[62] *Cantrell*, 94 S.W.3d at 384.

parties."[63]  The interpretation of a contract is a question of law for the courts.[64] Accordingly, a court must look to the language of a release to determine the parties' intentions.[65]  If that language is clear and unambiguous, the release must be enforced as written.[66] Terms in the release are to be interpreted by assigning language its ordinary meaning and without resort to extrinsic evidence.[67] What is more, the release "must be construed as a whole, giving effect to all parts and every word in it if possible."[68]

 A contract is ambiguous "if a reasonable person would find it susceptible to different or inconsistent interpretations."[69] However, the fact that a party to a release may have intended different results "is insufficient to construe a contract at variance with its plain and unambiguous terms."[70] Where a contract is "ambiguous or silent on a vital matter," a court may consider parol and extrinsic evidence relating to (1) the circumstances surrounding execution of the contract; (2) the subject matter of the contract; (3) the objects to be accomplished; and (4) the conduct of the parties.[71]

Determining whether a contract is ambiguous is, like contract interpretation itself, a question of law for the courts.[72] However, where a court determines that a

---

[63] *Id.* at 384 *(citing Withers v. Commonwealth, Department of Transportation*, 656 S.W.2d 747, 749 (Ky.App. 1983); *Wilcox v. Wilcox*, 406 S.W.2d 152, 153 (Ky. 1966)).
[64] *Id.* at 385.
[65] *Abney v. Nationwide Mut. Ins. Co.*, 215 S.W.3d 699, 703 (Ky. 2006), *as modified on denial of reh'g.*
[66] *Wehr Constructors, Inc. v. Assurance Co. of Am.*, 384 S.W.3d 680, 685 (Ky.App. 2012).
[67] *Frear v. P.T.A. Industries, Inc.*, 103 S.W.3d 99, 106 (Ky. 2003) (internal citations omitted).
[68] *City of Louisa v. Newland*, 705 S.W.2d 916, 919 (Ky. 1986).
[69] *Hazard Coal Corp. v. Knight*, 325 S.W.3d 290, 298 (Ky. 2010).
[70] *Cantrell*, 94 S.W.3d at 385 *citing Green v. McGrath*, 662 F. Supp. 337, 342 (E.D.Ky. 1986).
[71] *Id.* at 385.
[72] *Id.*

contract is ambiguous, areas of dispute concerning the extrinsic evidence set forth above are questions of fact, and construction of the contract is subject to resolution by the fact-finder.[73]

## IV.    ARGUMENT

The 2023 *Settlement Agreement* resolved the 2021 lawsuit and released LEEP's claims in this action. The section entitled "Mutual Release" provided in relevant part:

> Mutual Release. In consideration of the promises contained herein, and in consideration of the Parties' **agreement to waive all claims—in the broadest possible interpretation**—the Parties, with the intention of binding themselves, and all of their assigns, predecessors and successors in interest, do hereby expressly **release and discharge each Party and all of their** insurers, assigns, **attorneys**, affiliates, officers, directors, shareholders, members, employees, agents, predecessors and successors in interest **from any and all claims**, demands, debts, obligations, liabilities, **lawsuits**, costs, court costs, expenses and attorneys' fees **arising from or relating to any matter between them, of any nature whatsoever from the beginning of the world to the present date**.[74]

The plain language of the 2023 Settlement Agreement confirms its effect to release the parties' known, pending claims and lawsuits against their own former counsel. The plain meaning of the plural possessive "their" in the phrase "the Parties release … each Party and all of their attorneys" references the attorneys of both parties. The phrase has a distinct meaning from "each Party and all of *its* attorneys," a phrase whose singular possessive "its" would confine the release to claims against one another's attorneys.

This plain language reading aligns with the intent of the parties as expressed in the 2023 *Settlement Agreement* itself. Through clear and sweeping terms, the parties repeatedly stated their shared intent that the 2023 *Settlement Agreement* be construed

---

[73] *Id.*
[74] Ex. 1, 2023 *Settlement Agreement*, para. 1 (emphasis added).

as broadly as possible. The release provides that the parties "waive[d] all claims—*in the broadest possible interpretation,*" "*arising from or relating to any matter between them, of any nature whatsoever from the beginning of the world to the present date.*"

Furthermore, this plain language reading is necessary to give full effect to the 2023 *Settlement Agreement*. One of its stated purposes was to fulfill the signing parties' respective "wish to have no further contact in any capacity."[75] This purpose was incorporated into and made part of the 2023 *Settlement Agreement*. LEEP's claims against Zielke, *et al.* herein would thwart that purpose and rob the parties of the benefit of their bargain. For just one example, LEEP's claim relating to the arbitration against OVC sounds in legal negligence, and thus would require this Court to re-create the case-within-a-case. LEEP would effectively re-arbitrate its dispute with OVC, and Zielke, *et al.* would be required to re-create OVC's defense. It is difficult to imagine contact with LEEP that OVC would wish for less.

In sum, the plain language of the 2023 *Settlement Agreement*, the expressed intent of LEEP and OVC that the agreement be construed as broadly as possible, and the signing parties' stated purpose of ending all future contact together confirm that the release of "each Party and all of *their* attorneys" is dispositive of any claim LEEP now asserts against Zielke, *et al.*

In addition, no professional responsibility rules impede the effect of this plain language construction. The 2023 *Settlement Agreement* was signed on behalf of LEEP, not by then-counsel Richard Gaines, but by W. Scott Record, CEO of LEEP, Inc. Record "represent[ed], warrant[ed] and guarantee[d]" that he had "full authority to execute this

---

[75] *Id.*

Settlement Agreement and bind the Party or Parties for whom" he signed. Mr. Gaines did not sign the agreement and is not a party to it. Accordingly, SCR 3.130(1.8)(h)(1)'s limitation on a lawyer making an agreement prospectively limiting liability to a client is not at issue.

The 2023 *Settlement Agreement* is dispositive of any claim LEEP now asserts against Zielke, *et al*. Each of the claims in the *Complaint* and as-yet unaccepted *Amended Complaint* "arise from or relate to" matters "between" LEEP and OVC. Accordingly, summary judgment is warranted as to all claims.

**A. The 2023 *Settlement Agreement* encompasses LEEP's claims in this action.**

**1. The provision that "the Parties … release … each Party and all of their … attorneys" clearly and unambiguously releases claims against the parties' own attorneys, because "their" does not have a recognized usage as a possessive pronoun that refers to a singular noun of definite number and definite gender.**

The 2023 *Settlement Agreement* confirms that LEEP and OVC released not only claims against one another's attorneys but also their own attorneys. The operative clause states that "the Parties … expressly release and discharge each Party and all of their … attorneys … from any and all claims [and] … lawsuits … arising from or relating to any matter between them." This provision is unambiguous because the phrase "all of their … attorneys" refers to "the Parties." The phrase cannot refer to "each Party," because the only recognized usage of "their" in reference to an antecedent of definite number and definite gender is "of or relating to them or themselves," *i.e*., as a plural possessive pronoun. Accordingly, this provision operates to release claims against the parties' own attorneys, to the extent possible. and thus is dispositive of the claims in LEEP's as-pleaded *Complaint*.

As an initial matter, the use of the plural possessive "their" is intentional and significant. Terms in a release, as in any contract, are to be interpreted by assigning language its ordinary meaning.[76] The provision "the Parties … release and discharge each Party and all of their … attorneys" is not mere boilerplate; it is a deliberately constructed clause. Had the parties intended to limit the release to opposing counsel, they would have chosen the readily available possessive pronoun whose ordinary meaning is singular; after all, a release of "each Party and all of *its* attorneys" clearly would have an altogether different scope. They did not.

The first step in interpreting the 2023 *Settlement Agreement* is determining whether its terms are ambiguous.[77] The relevant inquiry "is not what did the parties mean to say, but … what did the parties mean by what they said."[78] An ambiguous contract is one that is capable of more than one different, reasonable interpretation.[79] Where no ambiguity exists, the contract will be enforced "strictly according to its terms" and interpreted "by assigning language its ordinary meaning and without resort to extrinsic evidence."[80]

The phrase "each Party and all of their … attorneys" is a compound direct object comprised of "each Party" and "all of their … attorneys." Each direct object is the recipient of the compound transitive verbs "release and discharge" that are the action of the subject "the Parties." Thus, in the same way that "Charles bought a book and pen" has the same meaning as "Charles bought a book and Charles bought a pen," the

---

[76] *Frear*, 103 S.W.3d at 106 (Ky. 2003) (citations omitted).
[77] *Id.* at 105-106.
[78] *Central Bank & Trust Co. v. Kincaid*, 617 S.W.2d 32, 33 (Ky. 1981).
[79] *Frear*, 103 S.W.3d at 106 (internal citations omitted).
[80] *Id.*

**Page 16 of 23**

relevant clause in 2023 *Settlement Agreement* has the same meaning as "the Parties ... expressly release and discharge each Party and the Parties expressly release and discharge all of their ... attorneys ..." The construction "all of their ... attorneys" as a modifier of "each Party," a construction which leaves "each Party" as a lone direct object, is therefore syntactically unsound. In determining whether the 2023 *Settlement Agreement* is ambiguous, the Court should, at a minimum, avoid violating basic rules of grammar, where following those rules leads to a single reasonable interpretation.

Likewise, the parties' choice of the plural possessive "their" is significant because it arises in the context of an agreement between two definite, non-gendered corporate entities. *Merriam-Webster* lists two definitions and three recognized usages of "their." Definition (1) applies to usage of "their" with respect to definite, plural antecedents. Definition (2) and usages (3)-(5) are all characterized by the indefinite or unknown number and/or gender of the antecedent to which "their" refers:

> (1) "of or relating to them or themselves especially as possessors, agents, or objects of an action;"
> (2) "his or her: his, her, its: used with an indefinite third person singular antecedent;" (*e.g.*, anyone in their senses);
> (3) usage as a reference to indefinite pronouns such as everyone, anyone, and someone (*e.g.*, someone left their cup on the table);
> (4) usage as an indefinite reference to singular nouns that stand for many persons (*e.g.*, "a person can't help their birth");
> (5) usage in reference to pronouns of indefinite gender and indefinite number (*e.g.*, "In great revolutions, the least among us improve their lot.").

"Their" as used in "the Parties ... expressly release and discharge each Party and all of their ... attorneys" is consistent only with the first definition Merriam-Webster lists: "of or relating to them or themselves." This usage incompatible with definition (2) and usage (3) above because "their" does not refer to an indefinite antecedent, whether singular or plural (*i.e.*, the "anyone" in "anyone in their senses"). It is incompatible with

**Page 17 of 23**

usage (4) above because of the absence of a singular noun that stands for many persons. It is incompatible with usage (5) above because "their," as used in the 2023 *Settlement Agreement*, does not refer to an antecedent of indefinite gender or indefinite number.

None of the enumerated definitions or usages accept "their" as a reference to a specific, third person singular antecedent whose (lack of) gender is known. The English language has a possessive pronoun for that; it's "its." What is more, no alternative plural possessive pronoun was available to the parties. Accordingly, "all of *their* attorneys" cannot reasonably be understood to mean "all of *its* attorneys." Just as the Court should be wary of flouting basic rules of grammar to identify an ambiguous contract term, so too should it exercise caution in disregarding dictionary definitions and usage guides for the same purpose.

It is fundamental that courts are to give effect to every word in a contract, if possible, when interpreting its scope.[81] Here, this means giving plural effect to the word "their" and validating the signing parties' choice not to use the singular "its." Substituting "its" for "their" would violate this essential rule of construction and nullify the actual language chosen by the parties. LEEP has readily accepted the benefit of the 2023 *Settlement Agreement*; it must accept the burden of the language it chose as well.

For the foregoing reasons, the provision that "the Parties ... release and discharge ... each Party and all of their ... attorneys" clearly and unambiguously releases claims against the parties' *own* attorneys. As a result, summary judgment is appropriate.

**2. Interpreting the 2023 *Settlement Agreement* to encompass LEEP's claims in this action is consistent with LEEP's and OVC's expressed intent that the agreement be as broad in scope as possible.**

---

[81] *See City of Louisa*, 705 S.W.2d at 919 (holding that "a contract must be construed as a whole, giving effect to all parts and every word in it if possible").

This reading of "the Parties ... release and discharge ... each Party and all of their ... attorneys" aligns with the intent of the Parties as expressed in the 2023 *Settlement Agreement* itself. Through clear and extraordinarily sweeping terms, LEEP and OVC repeatedly stated their shared intent that the 2023 *Settlement Agreement* be construed as broadly as possible. The release states the Parties' "agreement to waive all claims—in the broadest possible interpretation," "arising from or relating to any matter between them, of any nature whatsoever from the beginning of the world to the present date."[82]

LEEP's as-pleaded claims in the *Complaint* and claim pleaded in the unaccepted *Amended Complaint* directly arise from or relate to matters between LEEP and OVC. In short, LEEP asserts (1) breach of duty to organization in connection with the arbitration and Fayette Circuit Court litigation against OVC;[83] (2) breach of duty of competence, with respect to the arbitration against OVC;[84] (3) breach of duty of safekeeping property, in connection with proceeds received pursuant to the 2016 *Settlement Agreement* between LEEP and OVC;[85] and (4) a civil aiding and abetting claim with respect to Nordstrom's conduct in matters between LEEP and OVC.[86] These matters are precisely the type that would fall within the scope of the 2023 *Settlement Agreement* no matter how it is constructed. That the parties stressed that it should be constructed "in the broadest possible interpretation" to encompass claims "arising from or relating to any matter between them, of any nature whatsoever from the beginning of the world to the present date" only underscores that point.

---

[82] Ex. 1, 2023 *Settlement Agreement*, para. 1.
[83] *Compl.*, pp. 15-17.
[84] *Id*. at 18-20.
[85] *Id*. at 20-21.
[86] *See* proposed *Amended Compl.*, pp. 35-36.

**Page 19 of 23**

As above, it is fundamental that courts are to give effect to every word in a contract, if possible, when interpreting its scope.[87] The parties stated that the waiver provision of the 2023 *Settlement Agreement* should have "the broadest possible interpretation." To be clear, any reasonable interpretation of claims "arising from or relating to any matter between [LEEP and OVC], of any nature whatsoever from the beginning of the world to the present date" should extend to LEEP's claims herein, each of which relate directly to the arbitration and litigation against OVC. Again, LEEP has readily accepted the benefit of a walk-away settlement; it must accept the burden of the extraordinarily broad release language it chose as well.

3. **Interpreting the 2023 *Settlement Agreement* to encompass LEEP's claims in this action, all of which relate to litigation between LEEP and OVC, gives effect to those parties' stated intent "to have no further contact in any capacity."**

A stated purpose of the 2023 *Settlement Agreement* was to fulfill the parties' shared wish to have "no further contact in any capacity."[88] This background recital was incorporated into and made a part of the 2023 *Settlement Agreement*.[89] The parties' use of this background recital was intentional, as was their choice to incorporate this recital into the 2023 *Settlement Agreement*. The Court should give effect to these choices.

LEEP and OVC will be required to have further contact with each other if this action continues to be litigated. For just one example, LEEP's Breach of Duty of Competence claim (*i.e.*, the claim relating to the arbitration between LEEP and OVC in which Zielke, *et al*. represented LEEP) sounds in legal negligence. LEEP will be required

---

[87] *See City of Louisa,* 705 S.W.2d at 919 (holding that "a contract must be construed as a whole, giving effect to all parts and every word in it if possible").
[88] *See* Ex. 1, *2023 Settlement Agreement*, p. 1; para. 10.
[89] *Id*. at para. 10.

to re-create the case-within-the-case in order to establish what LEEP believes should have happened in the underlying arbitration.[90] LEEP will be required to bear the burden it bore in the original arbitration, and Zielke, *et al*. will be entitled to any defense OVC would have been able to assert. Thus, the case-within-the-case cannot proceed without at least some discovery into OVC's defenses to LEEP's claim that OVC violated the 2016 *Settlement Agreement*. In other words, OVC and LEEP will be required to have extensive further contact, notwithstanding the stated purpose of the 2023 *Settlement Agreement*. Accordingly, this Court should interpret the 2023 *Settlement Agreement* to encompass LEEP's claims in this action and therefore should enter summary judgment on LEEP's claims herein.

**B. Interpreting the 2023 *Settlement Agreement* to encompass LEEP's claims in this action is consistent with professional responsibility rules.**

No professional responsibility rules stand in the way of the 2023 *Settlement Agreement* encompassing LEEP's claims herein. The 2023 *Settlement Agreement* was signed on behalf of LEEP, not by then-counsel Richard Gaines, but by W. Scott Record, CEO of LEEP, Inc.[91] Record "represent[ed], warrant[ed] and guarantee[d]" that he had "full authority to execute this Settlement Agreement and bind the Party or Parties for whom" he signed.[92] Mr. Gaines did not sign the agreement and is not a party to it. Likewise, Zielke, *et al*. had not represented LEEP for more than a year at the time the 2023 *Settlement Agreement* was entered. Accordingly, SCR 3.130(1.8)(h)(1)'s limitation on a lawyer making an agreement prospectively limiting liability to a client is not at

---

[90] *See Osborne v. Keeney*, 399 S.W.3d 1, 10-11 (Ky. 2012).
[91] Ex. 1, 2023 *Settlement Agreement*, p. 3.
[92] *See id*. at para. 11.

issue. Besides, the "broadest possible interpretation"[93] of the 2023 *Settlement Agreement* is that it encompasses all claims against the Parties' attorneys *to the extent permitted by law*. Whether or not SCR 3.130(1.8)(h)(1) might limit LEEP's ability to make an agreement limiting its current counsel's liability is beside the point.

## V.    CONCLUSION

Defendants Zielke Law Firm, PLLC and Laurence Zielke respectfully request that this Court dismiss each of Plaintiff LEEP, Inc.'s claims as pleaded in its *Complaint* and proposed *Amended Complaint*, for the reasons stated above.

---

[93] *See* Ex. 1, *2023 Settlement Agreement*, para. 1 (expressing the parties' "agreement to waive all claims—in the broadest possible interpretation ...)".

Respectfully submitted,

/s/J. Allan Cobb
J. Allan Cobb
Andrea R. Hunt
**COBB LAW, PLLC**
1303 Clear Springs Trace, Suite 100
Louisville, KY 40223
Telephone:    (502) 966-7100
Fax:               (502) 434-5900
allancobb@cobblawpllc.com
andreahunt@cobblawpllc.com
*Counsel for Defendants Laurence Zielke
and Zielke Law Firm, PLLC*

## CERTIFICATE OF SERVICE

I certify that on the 7th day of May 2025, the original of this *Motion* was electronically filed with the Clerk of the Court and a copy was electronically served upon Plaintiff, LEEP, Inc., represented by the below attorney, using the Court's electronic filing system and email:

Christopher D. Miller
**ARNOLD & MILLER, PLC**
121 Prosperous Place, Suite 6B
Lexington, KY 40509
(859) 381-9999
cmiller@arnoldmillerlaw.com
*Counsel for LEEP, Inc.*

/s/J. Allan Cobb
J. Allan Cobb
Andrea R. Hunt
**COBB LAW, PLLC**
1303 Clear Springs Trace, Suite 100
Louisville, KY 40223
Telephone:    (502) 966-7100
Fax:               (502) 434-5900
allancobb@cobblawpllc.com
andreahunt@cobblawpllc.com
*Counsel for Defendants Laurence Zielke
and Zielke Law Firm, PLLC*

**Page 23 of 23**